IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| RAMONA A.,[1] | ) | |
|     Plaintiff, | ) | Civil Action No. 5:20-cv-00066 |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security, | ) | By:    Joel C. Hoppe |
|     Defendant.[2] | ) |         United States Magistrate Judge |

Plaintiff Ramona A. asks this Court to review the Commissioner of Social Security's final decision denying her claims for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434, and for supplemental security income ("SSI") under Title XVI of the Social Security Act, *id.* §§ 1381–1383f. The case is before me by the parties' consent under 28 U.S.C. § 636(c). ECF Nos. 14–15. Having considered the administrative record, the parties' arguments, and the applicable law, I find that substantial evidence supports the Commissioner's denial of benefits. Accordingly, the decision will be affirmed.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Acting Commissioner Kijakazi is hereby substituted as the named defendant in this action. 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

2012). Instead, a court reviewing the merits of the Commissioner's final decision asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000) (citing *Melkonyan v. Sullivan*, 501 U.S. 89 (1991)).

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, and not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) is working; (2) has a severe medical impairment that satisfies the Act's duration requirement; (3) has an impairment that

meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work existing in the economy. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[3] The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

In April 2018, Ramona filed for DIB and SSI alleging she had been unable to work since August 1, 2017, because of strokes, anxiety, and fibromyalgia. *See* Administrative Record ("R.") 68, 190. Ramona was forty-seven years old, or a "younger person" under the regulations, on her alleged onset date. R. 67; 20 C.F.R. §§ 404.1563(c), 416.963(c). Disability Determination Services ("DDS"), the state agency, denied Ramona's claims initially, R. 67–78, 79–90, and on reconsideration, R. 93–104, 105–16. In December 2019, Ramona appeared with counsel and testified at a hearing before ALJ Suzette Knight. R. 36–61. A vocational expert ("VE") also testified. R. 61–65.

ALJ Knight issued an unfavorable decision on January 9, 2020. R. 12–27. She found that Ramona's obesity and degenerative joint disease of the knees were "severe" medically determinable impairments ("MDI"). R. 15. But Ramona's "medically determinable mental impairment of anxiety did not cause more than minimal limitation in the claimant's ability to perform basic mental work and activities." R. 16. More specifically, the ALJ found no limitation

---

[3] Unless otherwise noted, citations to the Code of Federal Regulations refer to the version in effect on the date of the ALJ's written decision.

in Ramona's ability to understand, remember or apply information; concentrate, persist or maintain pace; or adapt or manage oneself. R. 16–17. The ALJ found a mild limitation in Ramona's ability to interact with others. R. 16. Therefore, ALJ Knight determined Ramona's MDI of anxiety was "non-severe." *Id.* Ramona's claimed impairment of fibromyalgia was classified as not an MDI because "there [was] no evidence of 11 positive tender points in the objective medical evidence." R. 15. Her claimed impairment of stroke was also classified as a non-MDI because the record contained "no objective medical evidence to support that assertion." R. 16 ("[O]bjective medical scans . . . show no evidence of a stroke."). Neither Ramona's obesity nor degenerative joint disease, considered individually or together, met or medically equaled the relevant Listing. R. 17 (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02).

ALJ Knight then evaluated Ramona's residual functional capacity ("RFC") based on all her MDIs during the relevant time. *See* R. 18–25. She found that Ramona's physical MDIs restricted her to performing "light work"[4] except she can "frequently climb ramps and stairs, and occasionally climb ladders, ropes or scaffolds. She can frequently balance, stoop, kneel and crouch; and occasionally crawl." R. 18. The ALJ did not include any mental limitations. *Id.* The ALJ found that Ramona was "capable of performing past relevant work as a salesclerk and a housekeeper/cleaner" because the "work does not require the performance of work-related activities precluded" by Ramona's RFC. R. 25. Based on the VE's testimony, the ALJ found that "these jobs are appropriately classified as requiring a light exertional level." *Id*. Additionally, the ALJ found that other jobs exist in the national economy that Ramona could perform, such as a

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). A person who can meet these relatively modest lifting requirements can perform "[t]he full range of light work" only if he or she can also "stand or walk for up to six hours per workday or sit 'most of the time with some pushing and pulling of arm or leg controls.'" *Neal v. Astrue*, Civ. No. JKS-09-2316, 2010 WL 1759582, at *2 (D. Md. Apr. 29, 2010) (quoting 20 C.F.R. § 404.1567(b)); SSR 83-10, 1983 WL 31251, at *5–6 (Jan. 1, 1983).

4

cafeteria attendant, cashier, and router. *Id.* Thus, Ramona was not disabled after August 1, 2017. *See* R. 26. The Appeals Council declined to review the ALJ's decision, R. 1–3, and this appeal followed.

## III. Discussion

Ramona makes two arguments challenging ALJ Knight's RFC determination. *See generally* Pl.'s Br. 6, 12, ECF No. 19. First, she asserts that the ALJ's exertional RFC is flawed because "the ALJ improperly discounted [Ramona's] subjective complaints of pain." *Id.* at 6–12. She also faults ALJ Knight for not finding her anxiety a "severe" impairment and "therefore adopted an RFC that did not incorporate limitations from that impairment." *Id.* at 12–15. These arguments are not persuasive.

A claimant's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week despite his or her medical impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis omitted). The Commissioner "has specified the manner in which an ALJ should assess a claimant's RFC." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). First, because RFC is by definition "a function-by-function assessment based upon all of the relevant evidence of [the claimant's] ability to do work related activities," SSR 96-8p, 1996 WL 374184, at *3, the ALJ must identify each impairment-related functional restriction that is supported by the record, *see Monroe v. Colvin*, 826 F.3d 17, 179 (4th Cir. 2016). The RFC should reflect credibly established "restrictions caused by medical impairments and their related symptoms," including those that the ALJ found "non-severe," that impact the claimant's "capacity to do work-related physical and mental activities" on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1, *2. Second, the ALJ's decision must include a "narrative discussion describing" how specific

5

medical facts and non-medical evidence "support[] each conclusion" in the RFC assessment, SSR 96-8p, 1996 WL 374184, at *7, and logically explaining how he or she weighed any inconsistent or contradictory evidence in arriving at those conclusions, *Thomas*, 916 F.3d at 311. Generally, a reviewing court will affirm the ALJ's RFC findings when he or she considered all the relevant evidence under the correct legal standards, *see Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 268–72 (4th Cir. 2017), and the written decision built an "accurate and logical bridge from that evidence to his [or her] conclusion[s]," *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). *See Thomas*, 916 F.3d at 311–12.

"Symptoms," or the claimant's own description of his or her medical impairment(s), 20 C.F.R. §§ 404.1502(i), 416.902(n), play a crucial role in a proper RFC determination, *Mascio*, 780 F.3d at 639–40. The regulations set out a two-step process for evaluating symptoms. *Lewis*, 858 F.3d at 865–66; 20 C.F.R. §§ 404.1529, 416.929. "First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms," *Lewis*, 858 F.3d at 866, "in the amount and degree[] alleged by the claimant," *Craig v. Chater*, 76 F.3d 585, 594, 596 (4th Cir. 1996). Second, assuming the claimant clears step one, "the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability," *Lewis*, 858 F.3d at 866, to work on a regular and continuing basis, *Mascio*, 780 F.3d at 637; *Hines*, 453 F.3d at 565. "The second [step] requires the ALJ to assess the credibility of the claimant's statements about symptoms and their functional effects," *Lewis*, 858 F.3d at 866, after considering all relevant evidence in the record, 20 C.F.R. §§ 404.1529(c), 416.929(c). The ALJ must give specific reasons, supported by "references to the evidence," for the weight assigned to the claimant's statements. *Edwards v. Colvin*, No. 4:13cv1, 2013 WL 5720337, at *6 (W.D. Va. Oct. 21, 2013) (citing SSR 96-7p,

6

1996 WL 374186, at *2, *4–5 (July 2, 1996)). A reviewing court will uphold the ALJ's credibility finding if his or her articulated rationale is legally adequate and supported by substantial evidence in the record. *See Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x 65, 68 (4th Cir. 2014) (citing *Eldeco, Inc. v. NLRB*, 132 F.32 1007, 1011 (4th Cir. 1997)). ALJ Knight's decision satisfies this "deferential standard of review," *Dunn v. Colvin*, 607 F. App'x 264, 271 (4th Cir. 2015). *See Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018) ("This court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. . . . [T]he justification provided by the ALJ—albeit somewhat sparse—was sufficient to allow us to determine that the ALJ performed an adequate review of the whole record and that the decision is supported by substantial evidence."). ALJ Knight appropriately considered Ramona's subjective complaints of pain, and she explained why those complaints were not entirely credible considering the other relevant evidence in the record.

    Ramona argues that "[e]ven though the ALJ found degenerate joint disease of the knees to be a severe impairment, she did not incorporate any limitations within the adopted RFC to account for [Ramona's] consistent and credible complaints of pain." Pl.'s Br. 7. She further argues that "[t]he ALJ's RFC gave no consideration for any of these non-exertional limitations due to pain." *Id.* at 11. I disagree. In her decision, ALJ Knight recognized that Ramona "subjectively asserted that she was in 10/10 pain," R. 20, and that Ramona "reported to an emergency room and complained of back pain," R.21. Further, ALJ Knight noted that Ramona "complained of bilateral knee pain for the past 2 weeks. In addition, she reported burning pain in her right foot and stated she was concerned that her foot pain was a deep vein thrombosis." *Id.* ALJ Knight found that Ramona's "medically determinable impairment could cause some of the

7

alleged symptoms," but that her statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record," R. 22, for the reasons explained elsewhere in her decision, *see* R. 22–23.

First, "[o]ther than a single injection," Ramona had "not required any surgery or physical therapy for her allegedly disabling impairments." R. 23; *see* R. 22 (citing R. 476 (left knee injection)). Second, Ramona's medical care for her allegedly disabling impairments was, "at times, sparse" during the relevant period, as her treatment history reveals "only approximately[] one treatment visit in 2017 and only approximately[] two treatment visits in 2018." 23; *see* R. 20–21 (citing R. 282, 444–58). Third, X-rays of Ramona's knees showed only "mild" to "moderate" degenerative changes, R. 23; *see* R. 21 (citing R. 470–71), and physical exams generally showed full strength and normal range of motion despite Ramona's frequent reports that she was in extreme pain, R. 22–23 (citing R. 433–34, 465–66); *see* R. 20–22 (citing R. 414–20, 433–34, 440–42, 444–58, 465–66, 476). Finally, although Ramona "was repeatedly advised to exercise, modify her diet and lose weight, she remained obese after her alleged [disability] onset date." R. 23.

The frequency and nature of a claimant's medical treatment are legitimate reasons for an ALJ to discount a claimant's complaints of debilitating pain, *see, e.g.*, *Dunn*, 607 F. App'x at 273–74 (conservative nature of treatment); *Mabe v. Colvin*, No. 4:12cv52, 2013 WL 6055239, at *7 (W.D. Va. Nov. 15, 2013) (gaps in treatment), and they are supported by substantial evidence in Ramona's record, *see* R. 282, 444–58, 476–77. Although ALJ Knight should have expressly acknowledged the medical evidence tending to support Ramona's testimony that "bilateral knee replacement procedures have been recommended to her," R. 22; *see* Pl.'s Br. 10 (citing R. 477 (physician discussing knee arthroplasty as "a last resort" depending on the location and extent of

8

arthritis)), substantial evidence nonetheless supports the ALJ's findings that Ramona underwent knee injections, but did not require knee surgery during the relevant time, R. 477; *see* R. 23. Substantial evidence also supports ALJ Knight's findings that Ramona's providers stressed "the importance of weight control not only in minimizing current symptoms but also to slow progression" of the arthritis in her knees, R. 477; *see* R. 23, and that Ramona's physical exams were mostly unremarkable or normal even when she reported extreme pain, *see, e.g.*, R. 414–20, 433–34, 440–42, 444–58, 476). Ramona does not challenge any of these reasons. *See generally* Pl.'s Br. 10–12.

Instead, Ramona asserts that ALJ Knight rejected her complaints of debilitating pain solely because the objective medical evidence did not corroborate those complaints, *id.* at 10, and she ignored or mischaracterized the severity of Ramona's bilateral degenerative joint disease, *id.* R. 10–11 (citing R. 476–77). Ramona's medical record contains two sets of bilateral knee X-rays taken during the relevant time. R. 470–72 (Jan. 2019); R. 476–77 (Sept. 2019). The first set showed "no acute facture or dislocation" and "no significant joint effusion" bilaterally, but "mild" to "moderate" joint degeneration in the left knee and "minimal" to "mild" degeneration in the right knee. R. 471–72 ("Degenerative changes of both knees, left worse than right."). ALJ Knight summarized these X-rays in her decision, R. 21, and cited the "mild" to "moderate" degenerative changes as one of several reasons why she discounted Ramona's complaints of debilitating knee pain, R. 23. The second set of X-rays showed "no evidence of acute bony injury, facture or dislocation" bilaterally, but "*severe* DJD medial and patellofemoral compartment" narrowing in the left knee and "*severe* patellofemoral DJD" in the right knee. R. 476 (emphasis added). ALJ Knight noted that this set of X-rays "reveal[ed] degenerative joint disease" in both knees, R. 21, but she did not acknowledge that the disease was "severe," R. 476.

9

Pl.'s Br. 10–11. Ramona is correct that this was error. *See Lewis*, 858 F.3d at 869.

The error is harmless, however, because it is "inconceivable" that ALJ Knight would have found Ramona disabled "absent the error." *Kersey v. Astrue*, 614 F. Supp. 2d 679, 696 (W.D. Va. 2009) ("Errors are harmless in social security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error."). As noted the ALJ's other reasons for discounting Ramona's complaints of debilitating pain are supported by the record and Ramona does not challenge those reasons. Moreover, contrary to Ramona's assertions, Pl.'s Br. 11–12, the ALJ did account for the pain-related limitations she found credible by restricting Ramona to "light" exertional work—which requires lifting 20 pounds at one time and frequently lifting/carry objects weighing ten pounds—as well as frequently climbing ramps and stairs, kneeling, and crouching, and occasionally crawling and climbing ladders, ropes, or scaffolds. R. 18. Ramona does not explain why these limitations are inadequate or identify any other work-related limitations the ALJ should have included in her RFC finding. *See McAnally v. Astrue*, 241 F. App'x 515, 518 (10th Cir. 2007) (affirming denial of benefits where plaintiff did "not identify any functional limitations that should have been included in the RFC [finding] or discuss any evidence that would support the inclusion of any limitations"). Accordingly, I find no error in this aspect of the ALJ's RFC determination.

Second, substantial evidence supports ALJ Knight's finding that Ramona's anxiety is not a severe impairment. R. 16. As the person seeking benefits, Ramona was primarily responsible for producing evidence sufficient to persuade the ALJ that her alleged functional "limitations or restrictions [were] attributable to medically determinable impairments," SSR 96-8p, 1996 WL 374184, at *2.

ALJs must follow a "special technique" whenever a claimant alleges disability based on a

10

mental impairment. *Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 659 (4th Cir. 2017) (citing 20 C.F.R. § 404.1520a). First, the ALJ determines whether the claimant produced sufficient evidence to establish the existence of a "medically determinable mental impairment." 20 C.F.R. § 404.1520a(b)(1); *see id.* § 404.1521. Second, assuming the claimant clears the first step, the ALJ must "rate the severity of [the] mental impairment(s)," 96-8p, 1996 WL 374184, at *4, by determining the degree to which it interferes with the claimant's overall "ability to function independently, appropriately, effectively, and on a sustained basis" in four areas of mental functioning: (a) understanding, remembering, and applying information; (b) interacting with others; (c) concentrating, persisting, and maintaining pace; and (d) adapting and managing oneself, 20 C.F.R. §§ 404.1520a(c), 416.920a(c).[5] The ratings should be based on all the relevant evidence in the record, including clinical signs on mental-status exams, the nature and efficacy of any treatment, and the claimant's symptoms or other statements describing how her mental impairment impacts her overall functioning in these areas. *See id.* §§ 404.1520a(c)(2), 416.920a(c)(2). If the ALJ rates the claimant's "degrees of . . . limitation as 'none' or 'mild,'" then he or she usually will also conclude that the impairment is "not severe" because it does not cause "more than a minimal limitation in [the claimant's] ability to do basic work activities," 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1), like remembering "simple instructions," exercising judgment, and interacting with coworkers, dealing with changes in a routine work setting, *id.* §§ 404.1522(b), 416.922(b). *See also* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(E), (H).

---

[5] ALJs use a five-point scale to document these ratings: "None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity." *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4); *accord* 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.00(F)(2)(a)–(e) (defining a similar five-point rating scale used at step three as: none or no limitation; mild or "slight" limitation; moderate limitation or "fair" functioning; marked or "serious" limitation; and extreme limitation or "not able to function in [the] area independently, appropriately, effectively, and on a sustained basis").

11

ALJ Knight found that Ramona's "medically determinable mental impairment of anxiety does not cause more than a minimal limitation in [Ramona's] ability to perform basic mental work activities." R. 16. In making this finding, ALJ Knight considered the four broad functional areas of mental functioning: (a) understanding, remembering or applying information; (b) interacting with others; (c) concentrating, persisting or maintaining pace; and (d) adapting or managing oneself. *See id.* (citing 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.04(B)). The ALJ found no limitation in Ramona's ability to understand, remember or apply information because Ramona can drive, "indicated that she can read and write," and "can care for all her personal needs"; "medical evidence shows that [she] was found to be alert and oriented"; and "her memory was found to be intact and it was noted that she had fluent speech." R. 16. ALJ Knight found that Ramona had no limitation in concentrating, persisting, or maintaining pace because she can drive, apply for Medicaid and food stamps, read and write, do laundry, make her bed, use the internet, and "care for all her personal needs," and "her concentration was found to be good and she was found to have clear thought processes." R. 17. Ramona had no limitation in adapting or managing herself because she "indicated that she could care for all her personal needs" and drive on a regular basis, and she was hired for a job after her alleged onset date. *Id.* ALJ Knight did, however, find a mild limitation in Ramona's ability to interact with others. R. 16. ALJ Knight explained that Ramona was able to live with others, spend time around the homeless shelter, get engaged, make good eye contact, and speak fluently; she got engaged after the alleged onset date; and she was alert and oriented, *id.* The regulations instruct that if the ALJ rates the claimant's degree of limitation in the broad functional areas "none" or "mild," then the ALJ will generally conclude that the claimant's mental impairment(s) is non-severe, unless the evidence indicates that there is more than a minimal limitation on the claimant's ability to

perform basic work activities. 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Ramona does not directly challenge ALJ Knight's ratings or her reasons for selecting those ratings.

I also find unpersuasive Ramona's assertion that the ALJ failed "to provide any logical explanation" for omitting Ramona's mild mental limitations from the RFC. Ramona argues that ALJ Knight erred because she found Ramona to have "mild" limitations in one of the four areas of mental functioning when performing the "special technique" at step two, but then did not include any mental limitations in the RFC. *See* Pl.'s Brief 12–14.

When a mental impairment is properly found to be non-severe, the ALJ must consider the extent to which the impairment and any related symptoms impact the claimant's ability to perform more specific work-related functions (e.g., following directions, exercising judgment, responding appropriately to other people, handling stress) under ordinary workplace conditions. *See Alla Z. v. Berryhill*, No. 5:17cv61, 2018 WL 4704060, at *3–4 (W.D. Va. Sept. 30, 2018) (citing 20 C.F.R. § 404.1545; SSR 96-8p, 1996 WL 374184, at *2–3, *5); SSR 85-16, 1985 WL 56855, at *1 (Jan. 1, 1985). "This RFC assessment is a holistic and fact-specific evaluation," *Patterson*, 846 F.3d at 659, that must reasonably account for any work-related functional limitations the ALJ identified when rating the impairment's severity, *Mascio*, 780 F.3d at 638 (step three); *Ashcraft v. Colvin*, No. 3:13cv417, 2015 WL 9304561, at *8–10 (W.D.N.C. Dec. 21, 2015) (step two). *See also* SSR 96-8p, 1996 WL 374184, at *4. The ALJ considered whether Ramona's anxiety caused functional limitation. She found that Ramona's non-severe anxiety caused "no more than 'mild' limitation in any of the functional areas and the evidence does not otherwise indicate that there is more than a minimal limitation in [her] ability to do basic work activities." R. 17. Thus, it is a misreading of the ALJ's decision to assert that her step two determination found functional limitations that should have been included in the RFC.

13

Ramona argues that a left-sided facial droop purportedly caused by anxiety should have been accounted for in her RFC, but she does not identify a particular limitation that she believes the ALJ should have included. Nor does she identify any evidence that supports a limitation. Most of the medical records that Ramona identifies regarding her anxiety come from treatment that significantly predates her alleged onset of disability of August 2017. *See* Pl.'s Br. 12–13 (citing R. 312 (June 2012), 363 (March 2013), 372 and 380 (February 2015). The records cited by Ramona from the relevant period also do not help her argument. During a trip to the emergency room in November 2018, Ramona reported anxiety, but examination findings showed normal mood and affect and no abnormal mental findings. R. 444–46. On December 18, 2018, Melanie Montemayor, M.D., conducted a thorough physical examination of Ramona, she observed that Ramona "was alert and had good eye contact and fluent speech[,] was appropriate, and … had clear thought processes." R. 417. Her "memory was normal, and concentration was good." *Id.* Ramona "was oriented to time, place, person, and situation." *Id.* Dr. Montemayor observed "a left facial droop," R. 416, and she noted that Ramona "describes anxiety and has undergone counseling in the past but not presently," R. 419. After identifying certain physical limitations, Dr. Montemayor stated, "[t]here are relevant communicative limitations due to left facial droop and anxiety," but she did not provide any further description or identify any specific limitation. R. 420. None of these medical records undermine the ALJ's finding that Ramona's anxiety caused no more than minimal work-related limitation. Moreover, other treatment notes support the ALJ's determination.

For example, during a new patient assessment in January 2019, Ramona reported a history of anxiety, but exam findings were entirely normal, noting, "[o]riented X3 with appropriate mood and affect and able to articulate well with normal speech/language, rate,

volume and coherence." R. 460–61. No specific mental impairment diagnosis was made. *See* R. 462–64. During other medical appointments, mental status examinations showed normal findings, R. 432, 466, even when Ramona reported experiencing anxiety and panic attacks. R. 465. Furthermore, the state agency psychologists also found that Ramona's anxiety was non-severe and caused no functional limitations. R. 71–72, 75, 97–98, 101. These treatment notes amply support the ALJ's determination not to include any functional limitation in the RFC attributable to Ramona's anxiety.

Based on the evidence of record, the ALJ reasonably found that Ramona's "mild" limitations in social interaction overall "did not translate into any specific, credibly established restrictions on her capacities" to work. *See Perry v. Colvin*, No. 2:15cv1145, 2016 WL 1183155, at *5–7 (S.D. W. Va. Mar. 28, 2016); *Brooks v. Astrue*, No. 5:10cv104, 2012 WL 1022309, at *11–12 (W.D. Va. Mar. 26, 2012). Accordingly, I find no error in the ALJ's decision not to include any functional limitation related to Ramona's non-severe anxiety.

### III. Conclusion

For the foregoing reasons, the Court will **GRANT** the Commissioner's motion for summary judgment, ECF No. 21, **AFFIRM** the Commissioner's final decision, and **DISMISS** the case from the Court's active docket.

A separate Order will enter.

ENTER: March 31, 2022

Joel C. Hoppe
United States Magistrate Judge